UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| United Specialty Insurance Company, | ) | C/A No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Versus | ) | **COMPLAINT** |
| | ) | **FOR DECLARATORY JUDGMENT** |
| Janine Bricout Sommer, In-Home | ) | **(Non-Jury)** |
| Compassionate Care Services, Inc. d/b/a | ) | |
| Comfort Keepers, and CK Franchising, Inc. | ) | |
| d/b/a Comfort Keepers, | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW the Plaintiff, United Specialty Insurance Company, complaining of the Defendants herein, and alleging as follows:

**JURISDICTION OF THE COURT OVER THE PARTIES**

1.      Plaintiff United Specialty Insurance Company (hereinafter "United") is a subdivision of State National which is a Texas entity.

2.      Defendant In-Home Compassionate Care Services, Inc. d/b/a Comfort Keepers (hereinafter "In-Home") is a corporation organized and existing under the laws of the State of South Carolina with its principal place of business in Horry County, South Carolina.

3.      Defendant CK Franchising, Inc. d/b/a Comfort Keepers (hereinafter "CK Franchising") is a corporation organized and existing pursuant to the laws of the State of Ohio but who does substantial business in Horry County, South Carolina.

4.      Defendant Janine Bricout Sommer (hereinafter "Underlying Plaintiff") is a citizen and resident of the County of Brunswick, North Carolina.

5.      Upon information and belief, this Honorable Court has both personal and subject matter jurisdiction over this matter, and venue is proper in the Florence Division of the United States District Court for the District of South Carolina pursuant to 28 U.S.C. §1332 as the action is between citizens of different states and the amount in controversy is in excess of $75,000.00, exclusive of costs and interest.  This Honorable Court further has personal and subject matter jurisdiction and venue is proper in the Florence Division of the United States District Court for the District of South Carolina pursuant to 28 U.S.C. §2201 *et seq.*

6.      United brings this declaratory judgment action to determine whether coverage exists pursuant to the United Policy referenced below and, if so, to what extent the Policy provides coverage.

## FACTS

7.      United hereby repeats and realleges the foregoing allegations as fully as if set forth herein verbatim.

8.      On or about July 9, 2018, Underlying Plaintiff filed a Complaint in the South Carolina Court of Common Pleas for Horry County, for claims arising out of an alleged theft of funds from the Underlying Plaintiff between August 2016 and January 2018. (hereinafter "Underlying Lawsuit").  A copy of the underlying complaint is attached hereto as **Exhibit "A"** and incorporated herein by reference.

9.      The Underlying Lawsuit alleges that the Underlying Plaintiff entered into a contract with In-Home for professional in-home care services.  In-Home operates under the name Comfort Keepers through a franchise agreement with CK Franchising.

10.      The in-home services were provided by an employee of In-Home named Zabrina Marie Ross, who the Underlying Plaintiff alleges stole the sum of $95,000 by way of check fraud, credit card fraud, and bank fraud.

11.     The Underlying Lawsuit asserts claims against In-Home for Breach of Contract, and claims against both In-Home and CK Franchising for Negligence, Negligent Misrepresentation, and Unfair Trade Practices.

12.     Specifically, the Underlying Lawsuit claims In-Home and CK Franchising are negligent:

  a.  In negligently hiring, retaining, supervising and training employee Zabrina Marie Ross;

  b.  In failing to implement of perform a rigorous interview process, including national background checks and review of personal and professional references on Zabrina Marie Ross;

  c.  In failing to have Zabrina Marie Ross bonded, insured and covered in order to protect Plaintiff;

  d.  In failing to perform background checks monthly on Zabrina Marie Ross;

  e.  In employing or continuing the employment of Zabrina Marie Ross when upon information and belief she failed to pass drug test screening and/or in failing to conduct drug test screening;

  f.  In misusing Plaintiff's confidential financial information;

  g.  In failing to adhere to the principles in truth in advertising;

  h.  In negligently performing duties assumed by contract;

  i.  In inaccurately representing the organization's scope of services; and

  j.  In failing to act as a reasonable person would act under the same or similar circumstances.

13.     The claims for Negligent Misrepresentation and Unfair Trade Practices are based upon the alleged false written and/or oral representations and/or advertising made by In-Home and/or CK Franchising to the Underlying Plaintiff regarding the scope and quality of services.

14.     United issued one insurance policy to In-Home: United Policy VGM19722124916-1 (hereinafter "Policy") which contains both a commercial general liability coverage form and a professional liability coverage form with effective dates of July 24, 2017 to July 24, 2018.  A copy of the Policy is attached hereto as **Exhibit "B"** and incorporated herein by reference.

15.     United is participating in the defense of In-Home in the Underlying Lawsuit pursuant to a Reservation of Rights as set forth in letter dated attached hereto as **Exhibit "C"** and incorporated herein by reference.

16.     The Underlying Lawsuit has not been settled. The Underlying Plaintiff seeks actual damages in the sum of $95,000 along with punitive damages for the alleged theft.  The amount in controversy in the Underlying Lawsuit identified above exceeds the jurisdictional amount of $75,000.00.

### FOR A FIRST CAUSE OF ACTION
**(Declaratory Judgment as to the Policy)**

17.     United hereby repeats and realleges the foregoing allegations as fully as if set forth herein verbatim.

18.     The Policy contains both a Professional Liability Coverage Form on Form APL1000 (10/14) and a Commercial General Liability Coverage Form on Form CG 00 01 04 13.

19.     The Policy also contains forms common to both the Commercial General Liability Form and the Professional Liability Form.

20.     All of the Underlying Plaintiff's claims arise out of the allege theft of money. For the reasons stated herein, there is no available coverage under the Commercial General Liability Form due to a Theft Exclusion. While the Theft Exclusion also applies to the Professional Liability Coverage Form, the Professional Liability Coverage Form also includes a separate endorsement that provides compensatory damages arising from theft will be paid up to a maximum of $50,000.

21.    Therefore, the amount of money United could be obligated to pay under the Policy for any of the claims in the Underlying Lawsuit is no more than $50,000.

22.    The Professional Liability Coverage Form on Form APL1000 (10/14) provides in pertinent part:

> SECTION I—PROFESSIONAL LIABILITY COVERAGE
>
> 1.    Insuring Agreement
> We will pat those sums that the insured becomes legally obligated to pay as "compensatory damages" as a result of "wrongful act" while engaged in the performance of your "professional services."

23.    The Policy on Form APL 1000 (10/14) defines Who is an Insured which includes:

> SECTION III- WHO IS AN INSURED
>
> 2. The following are also insureds:
>
> b.    Your current and former employees and volunteers, whether salaried or contracted, other than medical doctors, chiropractors, optometrists and dentist, are insured while acting within the scope of their duties on your behalf.

24.    Former In-Home Employee Zabrina Marie Ross would be considered an insured under the Policy but would be subject to the same terms and exclusions cited herein.

25.    The Professional Liability Coverage Form includes the following pertinent exclusions:

> 2.    Exclusions
>
> This insurance does not apply to:
>
> *       *       *
> d.    Any "claim" arising out of a criminal act by any insured. This includes conduct by any insured that is criminal, fraudulent, dishonest or with intent to cause injury by any insured.

e.    Any "claim" for which any insured is obligated to pay "compensatory damages" by reason of the assumption of liability in a contract or agreement.

l.    Any "claims" arising out of "professional services" provided by any insured who is not properly licensed or certified to provide those services in jurisdictions in which that insured practices.

26.    The Policy defines "compensatory damages" as follows:

2.    "Compensatory damages" means the following amounts incurred in excess of the retention: a. monetary judgement or monetary award that you are legally obligated to pay (including pre-or post-judgment interest and awards of claimant's attorney fees; or b. monetary settlement negotiated by us with your consent.

"Compensatory damages" do not include damage imposed upon the insured as punitive or exemplary damages for wanton, willful, outrageous, malicious or reckless conduct or for gross negligence.

27.    The Policy defines "professional services" on the Professional Liability Coverage Form on Form APL 1000 (10/14) as follows:

11.    "Professional services" are those services performed by the Insured during the normal course of doing business and are shown on the declaration page or any other policy endorsement as business description.

28.    The "business description" on the declaration page of the Policy is listed as "Home Health Care."

29.    The Policy defined "wrongful act" as follows:

13. "Wrongful Act" means: a. any act, error or omission in the furnishing of "professional services" to any patient or client.

All "wrongful acts" committed in the furnishing of "professional services" to any one person will be considered one "wrongful act." All interrelated "wrongful acts" of one or more insured will be considered one "wrongful act."

30.    The Policy contains a Theft Exclusion at Form VPL023 (10/14) that is common to both the Commercial General Liability Coverage Form and the Professional Liability Coverage Form, which states in pertinent part:

*This insurance does not apply to any Claim arising out of or in any way, directly or indirectly, from the theft, robbery, stealing, burglary or larceny by any person. There shall be no duty to defend and indemnify for such a claim. However, if the Professional Liability or Commercial General Liability coverage parts include a sublimit of coverage for Theft, this exclusion will not apply to the applicable coverages provided ty the sublimit endorsements.*

31.     The Professional Liability Coverage Form includes the following regarding the limits of insurance:

*SECTION IV – LIMITS OF INSURANCE*

*2.     Our Liability under this Coverage Part is limited as follows:*

*a.     The total amount we will pay for all "compensatory damages" because of injury arising out of all "wrongful acts" to which this Coverage Part applies will not exceed the limit of insurance stated in the Declarations as Aggregate.*

32.     The Limits of Insurance was further modified by the Special Outpatient Therapy Clinic Enhancement Endorsement on Form APL 1019 (10/14) which states in pertinent part:

*Theft of or Damage to Client's Personal Property*
*We will pay those sums that you become legally obligated to pay as compensatory damages due to the theft of or damage to a client's personal property by any insured while performing professional services on behalf of the named insured.*

***The most we will pay for loss, damage of expenses involving theft is $50,000 for each policy period regardless of the number of occurrences.***
***(emphasis added).***

33.     The Policy also contains a Multi-Exclusion Endorsement on the Commercial General Liability Form on Form AGL1010 (10/14) which restates the Theft Exclusion contained on the on Form VPL023 (10/14).

34.     Here, the Policy contains Theft exclusions applicable to both the Professional Liability and Commercial General Liability Coverage Forms.

35.     All of the claims in the Underlying Lawsuit arise out of the alleged theft of $95,000 of the Underlying Plaintiff's money by an employee of In-Home.

36.     The alleged theft, regardless of whether it took place on one occasion or over the course of a period of time, as stated in the Underlying Lawsuit, is considered only one "wrongful act" under the terms of the Policy.

37.     The theft is an intentional and "wrongful act" that occurred during the rendering of "professional services."

38.     The alleged theft arose during the course of In-Home's employee providing home health care services.

39.     For these reasons, there is no coverage for any of the claims in the Underlying Lawsuit under the Commercial General Liability Coverage Form.

40.     While the Theft Exclusion also applies to the Professional Liability Coverage Form, that Form was modified by the Policy's Special Outpatient Therapy Clinic Enhancement Endorsement which provides for a sub-limit for compensatory damages even in the event of theft.

41.     Therefore, to the extent In-Home or CK Franchising is determined to be liable for the claims asserted in the Underlying Lawsuit, any "compensatory damages" that fall within the terms of the Policy can be no more than $50,000.

42.     Based upon the above-cited exclusions, along with additional exclusions cited below, there is no coverage in the Policy available to In-Home or CK Franchising above and beyond $50,000 for the claims in the Underlying Lawsuit.

43.     There are other exclusions in the Policy that preclude coverage for the claims in the Underlying Lawsuit for any damages beyond compensatory damages up to $50,000, pursuant to the Theft sub-limit discussed above.

44.     While the Professional Liability coverage form operates as a "claims made" policy, the Commercial General Liability coverage operates as an "occurrence based" policy with different terms and definitions.

45.     The Policy on the Commercial General Liability Coverage Form states in pertinent part:

> *Coverage A – Bodily Injury and Property Damage Liability*
>
> *1. Insuring Agreement*
>
> *a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.*

46.     "Property damage" is defined in pertinent part as:

> *a. Physical injury to tangible property, including loss of use of that property.*
> *b. Loss of use of tangible property that is not physically injured.*

47.     "Occurrence" means an "accident, including continuous or repeated exposure to substantially the same general harmful conditions.

48.     For there to be coverage under the Commercial General Liability Coverage Form, there must be "property damage" that occurred during the policy period, that was caused by an "occurrence."

49.     All of the claims in the underlying lawsuit arise out of the alleged theft of money from the Underlying Plaintiff by way of check fraud, credit card fraud, and bank fraud.

50.     The theft of money is not an "occurrence", and the loss of money in a bank account is not considered "property damage" under the Commercial General Liability Coverage Form.

51.     Therefore, without even reaching the applicable theft exclusion, there is no coverage under the Policy's Commercial General Liability Form for any of the claims in the Underlying Lawsuit.

52.    The Commercial General Liability Coverage form also includes a Personal and Advertising coverage form on Form CG 00 01 04 13 states in pertinent part:

> We will pay those sums that the insured becomes obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.

53.    "Personal and advertising injury" means:

> Injury, including consequential "bodily injury" arising out of one ore more of the following offenses:
>
> a. False arrest, detention or imprisonment;
> b. Malicious prosecution;
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> d. Oran and written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organizations goods, products, or services;
> e. Oral or written publications, in any matter, of material that violates a person's right of privacy;
> f. The use of another advertising idea in your "advertisement"; or
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

54.    None of the allegations in the Underlying Lawsuit are considered "Personal and advertising injury" under the terms of the Policy.

55.    The Personal and Advertising coverage form contains exclusions on Form CG 00 01 04 13 2. Exclusions

> This insurance does not apply to:
>
> a. Knowing Violation of Rights of Another
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."
>
> b. Material Published with Knowledge of Falsity

*"Personal and advertising injury" arising out of oral and written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.*

*c. Material Published Prior to the Policy Period*
*"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.*

*d. Criminal Acts*
*"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.*

*g. Quality or Performance of Goods – Failure to Conform to Statements*
*"Personal and advertising injury" arising out of the failure of goods, products or services to confirm with any statement of quality or performance made in your "advertisement."*

56.     The claims in the Underlying Lawsuit for Negligent Misrepresentation and Unfair Trade Practices (and partially Negligence) are based upon allegations that In-Home failed to follow the principles of "truth in advertising" and inaccurately represented the scope of their services. The Underlying Lawsuit also cites to other alleged false misrepresentations made in advertising and other materials provided to the Underlying Plaintiff.

57.     Based upon the above-cited exclusions in Paragraph 55, the Policy does not provide coverage for the Negligent Misrepresentation claim or the Unfair Trade Practices Claim (or the Negligence where based upon false representations) because those claims are based upon written and/or oral publications directed to the Underlying Plaintiff that are alleged to have been false, and the actions of In-Home are alleged to have not conformed to the statements made.

58.     The Underlying Lawsuit also includes a Negligence claims that is plead as a claim for negligent hiring.

11

59.     The negligent hiring claim is made because of the alleged theft of money, and for the reasons already stated herein, the Policy does not provide coverage for the claim for negligent hiring.

60.     The Policy on the Commercial General Liability Form CG 21 06 05 14 also contains an Exclusion – Access or Disclosure of Confidential or Personal Information and Data-Related Liability – with Limited Bodily Injury Exception that reads in pertinent part:

> *This insurance does not apply to:*
>
> *p. Access or Disclosure of Confidential or Personal Information and Data-related Liability*
> *Damages arising out of:*
>
> *(1) Any access to or disclosure of any person's or organizations confidential or personal information, including patents trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information;*

61.     The claims in the Underlying Complaint include allegations that In-Home and/or CK Franchising accessed Underlying Plaintiff's personal financial information which led to the theft of money.  These claims are excluded under the Commercial General Liability portion of the Policy by the above-cited exclusion cited in Paragraph 44 herein.

62.     The Policy on Form CG 21 16 07 98 of the Commercial General Liability contains an Exclusion – Designated Professional Services that reads in pertinent part:

> *This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.*

63.     Form CG 21 16 07 98 provides that the description of Professional Services is "ALL PROFESSIONAL SERVICES."

64.     The business description on the Common Policy Declarations Form VPL002 (10/2014) is "Home Health Care."

65.     The home health care services provided by In-Home are considered "professional services" under the terms of the Policy.

66.     Therefore, the Commercial General Liability portion of the Policy excludes coverage for all of the claims in the Underlying Lawsuit as they all arise from the professional services of In-Home and/or CK Franchising.

67.     The Commercial General Liability Form also includes a standard exclusion which reads:

> *2. Exclusions*
>
> *This insurance does not apply to:*
> *a. Expected or Intended Injury*
> *"Bodily Injury" or "property damage" expected or intended from the standpoint of the insured.*

68.     While there is no "bodily injury", "property damage". Or "personal and advertising injury" caused by an "occurrence", even if there were, under the above-cited exclusions, there is no coverage under the Commercial General Liability Coverage Form for the claims in the Lawsuit arising out of the alleged theft, because theft is an intentional act, and the loss of use of money by the Underlying Plaintiff would be expected as the result by the employee of the Insured who allegedly committed the theft.

69.     The Commercial General Liability Form also includes a standard exclusion which reads:

> *2. Exclusions*
>
> *This insurance does not apply to:*
> *b.  Contractual Liability*
> *"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.*

70.     The Professional Liability Coverage Form on Form APL 1000 (10/14) also contains an exclusion for breach of contract claims which states:

> *This insurance does not apply to:*
>
> *e. Any "claim" for which any insured is obligated to pay "compensatory damages" by reason of the assumption of liability in a contract or agreement.*

71.     The breach of contract exclusions in the Policy preclude coverage for damages that may result from the Breach of Contract claim in the Underlying Lawsuit.

72.     The Policy on Form VPL022 (10/14) and Form AGL10110 (10/14) also contains a Punitive or Exemplary Damages Exclusion which reads: *This insurance does not apply to punitive or exemplary damages, fines or penalties.*

73.     In the event punitive or exemplary damages are awarded in the Underlying Lawsuit, those damages are excluded under the terms of the Policy.

74.     Therefore, pursuant to 28 U.S.C. §2201 *et seq.*, United seeks a declaratory judgment that it has no duty or obligation under the Commercial General Liability Coverage Form of the Policy to defend and/or indemnify In-Home for any matter whatsoever relating to the Underlying Lawsuit or any judgment arising therefrom.

75.     United also seeks a declaratory judgment that in the event damages are awarded against In-Home relating to the Underlying Lawsuit arising out of the "professional services" of In-Home and the alleged theft of Plaintiff's property, that any such damages recoverable under the Policy are limited to no more than $50,000 by the Professional Liability Coverage Form.

## **Prayer**

WHEREFORE, United prays that this Honorable Court issue an Order declaring that, in the events damages are awarded in the Underlying Lawsuit, any damages recoverable under the Policy would be capped at $50,000, and for such other and further relief as this Honorable Court may deem just and appropriate.

WHEREFORE, should this Honorable Court determine that United is under a further obligation to indemnify In-Home under the terms of the Policy, United prays that this Honorable Court set forth the extent to which United is under such duty and for such other and further relief as this Honorable Court may deem just and appropriate.

HOOD LAW FIRM, LLC
172 Meeting Street
Post Office Box 1508
Charleston, SC  29402
Phone: (843) 577-4435
Facsimile: (843) 722-1630
Email: Info@hoodlaw.com

**s/ J. Blanton O'Neal, IV**
J. Blanton O'Neal, IV (7602)
John O. Radeck, Jr. (12021)

***Attorneys for the Plaintiff United Specialty Insurance Company***

**February 4, 2019**
Charleston, South Carolina